## Home Insurance Company of New York v. Wilson.

(Decided May 15, 1925. Rehearing Denied, with Modification October 16, 1925.)

### Appeal from Russell Circuit Court.

1. Escrows—Depositary with Instructions as to Parties' Agreement Concerning Delivery and Taking Effect of Instrument Essential.—To create a valid escrow there must be a depositary with instructions as to parties' agreement concerning delivery and taking effect of escrow instrument.

2. Escrows—Instrument Cannot be Delivered in Escrow to a Depositary who is Exclusively Agent of Either Party.—Instrument cannot be delivered in escrow to depositary who is exclusively agent of either party.

3. Insurance—Delivery of Deed in Escrow, Operating as Change in Title Affecting Insurance Company's Liability, Held Not Shown.—Where husband, as part of property settlement with wife, exe-

cuted deed to her of certain property, which he deposited without directions in bank, and later, after destruction of property by fire, withdrew deed and delivered it to grantee wife, held there had been no valid delivery in escrow at time of property's destruction so as to relieve insurance company from liability under policy containing provision against change of ownership.

4.  Insurance—Insurer has Burden of Proof of Contents of Contract Alleged to Operate as Conveyance of Equitable Title to Proprety Before Destruction by Fire.—Insurance company, alleging that, before destruction of property by fire, owner had entered into property settlement contract with his wife, which operated to transfer equitable title to wife and relieve company from liability, has burden of proof of contents of such contract.

5.  Insurance—Claim that Equitable Title to Property was Conveyed Before its Destruction Not Sustainable, in Absence of Showing of Contents of Contract.—Defense of insurance company that, before destruction of property by fire, owner had entered into property settlement agreement with wife, which operated as conveyance to wife of equitable title to property involved, and relieved defendant from liability, held not sustainable, in absence of showing of contents of such contract.

6.  Specific Performance—Contract to Operate as Conveyance of Equitable Title Must Definitely Describe Property.—Contract, to operate as transfer of equitable title, which could be enforced by transferee, must sufficiently describe property proposed to be transferred, to permit identification without extraneous proof.

E. BERTRAM, F. M. DRAKE, WM. J. CHUMBLEY and BRUCE, BULLITT & GORDON for appellant.

PHELPS & ANTLE, J. H. STONE and LILBURN PHELPS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and plaintiff below, H. C. Wilson, procured a fire insurance policy with the appellant and defendant below, Home Insurance Company of New York, under the terms of which it insured him against loss by fire to his dwelling house and contiguous buildings, which policy was alive and in full force at the time the property was destroyed by fire on May 22, 1922. The insurance was not paid and this action was filed in the Russell circuit court to recover of defendant the amount of plaintiff's damages sustained by the fire. Aside from some denials, and for which there was no proof to sustain, the only defense was that the plaintiff did not own the property at the time it was destroyed, but, on the contrary, had conveyed it to his wife eleven days theretofore. A

reply made the issues and after proof was heard before a jury the court peremptorily instructed it to find for plaintiff the amount of the damages he sustained by reason of the fire. Another instruction properly submitted the criterion of recovery and the jury returned a verdict in favor of plaintiff for $879.27, less $18.32, the amount of an unpaid premium note not then due, which verdict the court declined to set aside on a motion made for that purpose and rendered judgment in favor of plaintiff for its amount, to reverse which defendant prosecutes this appeal.

The policy contained the usual clause for sole ownership and against any change in or transfer of the title to the insured property without the knowledge or consent of defendant, and providing that if it were done the policy would become null and void, and it was upon that clause that the defense was rested. The only facts (and which are uncontradicted) in support of that defense are in substance these: That in January prior to the fire, Mrs. Wilson, plaintiff's wife, filed an equity action against him in the Russell circuit court, seeking to recover of him permanent alimony to the amount of $5,000.00. On May 11, 1922, the partiles reached a conditional agreement by which that suit was to be settled, the terms of which were that the plaintiff herein, and defendant in that suit, would convey to his wife, the plaintiff therein, the property here involved for life if she would relinquish all other rights in and to his property and dismiss her suit. It does not appear that there was any agreement by which any deed should be executed at that time, but, on the contrary, it appears that there was some sort of an independent agreement which was, perhaps, in writing; but when the witnesses were asked concerning it they stated they did not know where the agreement was, unless it was filed as an exhibit in the alimony action, which had been completely settled at the time of the trial herein and when the witnesses testified, but was only conditionally settled at the time of the transaction involved. So that, we are deprived of all assistance in determining the effect of such agreement (if one was made) because of a want of knowledge of its terms.

The husband, however, did sign and acknowledge a deed to his wife and, according to the undisputed proof, took it and deposited it in the bank with which he was doing business. It nowhere appears who was the particular person, or officer of the bank, if anyone, with whom

the deed was left or to whom it was delivered, and there is an entire absence of proof that such person, whoever he might be, was given any instructions whatever by the husband concerning his duties as depositary, and no officer in the bank was introduced in order to establish such facts, if they existed. Neither was there any proof to establish any escrow agreement with any agreed custodian of the deed or the terms upon which he should hold it until the conditions agreed upon should be performed by Mrs. Wilson. The next term of the court following the date of the deed was in June, 1922, and on the 24th day of that month an order was made in the alimony suit dismissing it settled, and afterwards plaintiff herein procured the deed and delivered it to his wife, he having occupied the property until it was destroyed. We also gather from his proof that in addition to the deed he paid his wife something over $400.00, which it would appear was in lieu of the destroyed real property agreed to be conveyed. The question for determination, therefore, is: Are the proven facts as above outlined sufficient to avoid the policy under its contained condition for sole ownership and against a change or alteration of title?

Learned counsel for defendant relies upon the cases of Cottingham v. Fireman's Fund Insurance Co., 90 Ky. 442; McKenney v. Western Assurance Co., 97 Ky. 474; French v. Delaware Insurance Co., 167 Ky. 176, and other like ones cited in those opinions to the effect that the absolute conveyance of an *equitable* title by the insured without the knowledge or consent of the insurer will avoid the policy after it takes effect, or will prevent it from attaching if the title is in that condition at the time it is issued, since the transfer of the equitable title to the whole or a part of the property creates a change or alteration of title within the contemplation of the parties as contained in the condition of the policy, and will render it void *ab initio* if the title was in that condition when it was issued or subsequently avoid it when the change of title is so made. We have no criticism to make of the doctrine announced by those cases. On the contrary, we regard it as eminently sound, and if the facts presented by this record were the same or substantially similar to the ones involved in them there would be no difficulty in disposing of the case. But there is, according to our view, a wide difference between the facts of those cases and the facts of this one. The transactions in them, which we held avoided the policy, were absolute ones

taking effect instanter upon the delivery of the writing conveying the equitable title, although they may have contained promises by the vendee to be subsequently per-formed by him.  Here it is not shown that there was a delivery to the vendee of any writing whatever executed by the vendor sufficient to transfer to the wife any sort of title, unless, as it may be contended, the deed by plaintiff was delivered to the bank *in escrow,* but which we shall presently see was untrue.

Whether the delivery of a deed to a particular and agreed upon depositary accompanied with an escrow agreement so as to make the transaction a completed escrow arrangement, would have the effect to avoid the policy under such clause is a question we need not determine in view of our conclusion that there was never any such arrangement entered into in this case. We are, therefore, relieved from a discussion of the technical and somewhat variant rules concerning the legal establishment of escrow relations.  Whatever may be the other necessary elements to create an escrow delivery all the text writers and adjudged cases hold that there must be a depositary with instructions from the parties as to their agreement concerning the delivery and taking effect of the escrow instrument, and such instructions to the depositary constitute what the law denominates the ''escrow agreement,'' which is a different thing from the instrument placed in escrow.  In other words, there can be no escrow delivery except upon some condition agreed upon by the parties and which condition contains the terms of the escrow agreement and must be communicated to the depositary and his agreement to accept the custody of the instrument upon those terms, for until then his responsibility does not attach.  And so, we read in 10 R. C. L., page 624, ''That mere words (by the one executing the instrument) creating an expectation or promise that something will be done, do not constitute that 'condition' which is indispensable to an escrow,'' and on page 625 it is said, ''There can be no escrow without conditional delivery of the instrument to a third person as depositary.'' The reason for that rule is that until the delivery of the escrow instrument to the depositary upon the agreed condition or conditions it may be revoked at any time by the one so delivering, but when the delivery of the instrument is accompanied with the conditions mutually beneficial to both parties, and in which each has an interest, it then becomes irrevocable during the period it is to remain

in escrow. And so, in the same publication, on page 626, we read, "Where the possession of the depositary is subject to the control of the depositor, an instrument can not be said to be delivered, and it is not an escrow. . . . To constitute an instrument an escrow, it is essential that the deposit of it should be in the meantime irrevocable." Hence, it is that an instrument cannot be delivered in escrow to a depositary who is exclusively the agent of either party, for if he was the agent of the depositor by relation there would be no parting with the possession by the maker, since the possession of an agent is the possession of his principal; and likewise a delivery to the exclusive agent of the grantee would be a delivery to the latter himself and the escrow character of the instrument would be destroyed. The same distinctive features of a completed escrow delivery are thus stated in the text of 8 R. C. L. 993, "It must be remembered that delivery is as essential to validity of an escrow as to a deed, the only difference being as to the manner and purpose of the delivery; but here it seems sufficient to keep in mind that the distinctive feature of an escrow is the delivery of a deed to a third person to await the performance of some condition whereupon the deed is to be delivered to the grantee and the title is to pass, the depositary being the agent of both parties, and the instrument not being effective as a conveyance until the condition is performed."

The same general principles may be found stated in 21 C. J. 866, par. 2, 867, par. 9, 869, par. 9 and 870, par. 12, in the latter of which it is said. "A deposit made by the depositor alone will not be sufficient to constitute a valid escrow; it must be made by the agreement of all the parties to the instrument." And on the same page, in paragraph 11, it is pointed out that, "A mere agreement between the parties that the instrument shall not be delivered to the grantee or obligee until the performance of a certain condition, or happening of a contingency, will not be sufficient to constitute the instrument an escrow; it must be actually deposited with a third person under the agreed upon conditions." The same general principles were announced by this court in the cases of Watson v. Chandler, 133 Ky. 757; Vaughan v. Vaughan, 161 Ky. 401; Ball v. Sandlin, 176 Ky. 537; City Nat'l Bank v. Anderson, 189 Ky. 487, and numerous others found in those opinions. The question, therefore, is, whether the transaction as proven in this record was sufficient to make the deed executed by plaintiff herein

an escrow from and after the time it was left with the bank?

As we have said, and now repeat, there was no proof of any agreement that the husband was to execute a deed before the dismissal of the alimony action brought by his wife against him; but had there been such proof then there was no effort to show that it was further agreed between the parties that any such deed should be delivered in escrow until the dismissal of the alimony proceedings. At most there was only an agreement that if his wife would dismiss her suit plaintiff would then execute to her a deed for the insured property. If, however, the oral understanding had gone even further, then there is still an entire absence of proof in the record of the deed having ever been delivered to anyone as a depositary under any escrow agreement.   On the contrary, it would appear that the deed was still in the possession of the grantor, husband, and in the hands of *his* agent, the bank, with whom he temporarily left it as a mere custodian.   It, therefore, necessarily follows that whatever may be the effect of the execution of a deed and its indisputable deposit *in escrow* upon the title of the property within the contemplation of the condition in the policy, the latter was not violated in any respect in this case, since the insured never delivered his deed in escrow, or otherwise before the fire.

But it is strongly urged that the testimony shows that plaintiff and his wife entered into a written agreement of compromise of the latter's alimony suit, which they duly executed, and that it was sufficient to transfer the equitable title to the property to the wife and that there was thereby such a change of title as to forfeit the policy under the Cottingham and other cases, *supra.* That contention necessarily rests upon the assumption that the contract as so written and executed was sufficient in its terms to transfer the equitable title to the equitable vendee, and if it was so proven the contention would be correct.   But we find no proof in the record as to the contents of that contract.   The defense here was denied and the burden was upon the defendant to prove it in such manner and form as to make it effective under the provisions of the policy relied on.   One of the essentials to the contents of such a contract in order for it to transfer an equitable title that could be enforced by the vendee, is that the property proposed to be conveyed should be sufficiently described in the writing so that it could be

identified without extraneous proof, which requirement is necessary to a valid contract for the sale of real estate under our statute of frauds. It would be useless for us to cite the great number of cases from this court sustaining that proposition and holding that without the necessary description the executory contract to convey was valid for no purpose. When plaintiff denied in his pleading that the forfeiting clause in the policy had been violated, he necessarily denied that he had entered into any contract sufficient to work a violation, and it thereby behooved defendant to prove that such a contract had been executed and delivered, and that burden was not discharged by proving that *a* written contract was executed and delivered without also proving its contents, so that the court might determine whether it was sufficient to constitute a violation of the condition in the policy. As stated at, the close of the testimony when the court peremptorily directed a verdict for plaintiff, there was no such proof in the record, and for that reason the court did not err in so directing.

It appearing, therefore, that the proof failed to show a transfer to plaintiff's wife of either the equitable or legal title to the property, the defense failed, and the peremptory instruction was proper and the judgment is affirmed.